[No. 6121.]

VICKERY v. WILSON ET AL.

1.  City and County of Denver—Charter Provisions—General Election—Meaning.

Section 22, of the charter of the City and County of Denver, provides that all ordinances initiated by the electors shall be passed by the council, or else referred to the qualified electors at the next "general election," not held within thirty days after such petition is filed; and § 166, of the same instrument, makes provision for an election to be held on the third Tuesday of May biennially, and refers to such election as "a general city and county election." Held, that, since the charter deals entirely with city and county affairs, the expression, "general election," used in § 22 clearly refers to the next general city and county election, and not to the biennial elections for state and county officers held in November.—P. 494.

2.  Elections—Franchises—Canvassing Returns—Courts — Jurisdiction to Restrain.

The power to canvass the votes, cast at an election for public purposes, and certify the result is political, and not judicial, and hence a court of equity has no jurisdiction to inhibit the exercise of this power by the proper statutory officer; nor does

the fact that the election is concerning a franchise, and illegal, change the rule, for such question can be litigated and determined, as well as the lack of legal authority to canvass the returns and certify the result, in the proceeding contemplated by § 289, Colo. Civil Code, to test the validity of a franchise; and, further, the canvassing of the returns and certifying the result will not make the election valid, if, in fact, it is invalid, nor will such acts prevent an appropriate action to test the validity of the franchise.—P. 496.

3.  Same—Right of an Individual to Enjoin.

A bill in equity will not lie at the suit of an individual to enjoin the alleged invasion of a public right, where it appears the damage he may suffer is no different from that of the public generally.—P. 497.

4.  Same—Private Loss Involved.

The fact that a person will suffer loss, in the depreciation of certain company stock, on account of the necessary delay involved in the code proceeding, provided for testing the validity of a franchise voted by the people, does not authorize an action by him to enjoin a county clerk from canvassing the vote and certifying the result.—P. 497.

*Error to the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Action by A. E. Wilson against Albion K. Vickery, individually, and as county clerk and recorder of the city and county of Denver, defendant brings error from a judgment for plaintiffs.

*Reversed and remanded with instructions to dismiss.*

Decision *en banc.*  CHIEF JUSTICE STEELE not participating.

Messrs. ELLIOTT & BARDWELL and Mr. JAS. H. PERSHING (Mr. JNO. M. WALDRON, special counsel), for plaintiff in error.

Messrs. DIXON & DIXON, for defendants in error.

In October, 1906, the city council of the city and county of Denver passed an ordinance submitting to

the qualified tax-paying electors of that municipality, at the general state and county election, to be held November 6th, 1906, the question of granting to Ulysses S. Grant, Jr., his successors and assigns, a franchise, authorizing him to construct and maintain a telephone and telegraph system in the city and county of Denver. The ordinance further provided that the election upon the question submitted should be held during the same hours, and at the same polling places, and conducted by the same election officials having charge of, and conducting the general state and county election, to be held November 6th, 1906. The ordinance in question was initiated by petition, signed by electors of the city and county of Denver. The election was held on the date designated and votes cast for and against the granting of the franchise, which were counted and certified by the judges of election. From these returns it appears that the vote was in favor of granting the franchise. Shortly after the election, the defendant in error, on behalf of himself as a citizen and tax-paying elector of the city and county of Denver, and for and on behalf of all citizens of Denver joining with him, brought an action against the plaintiff in error, individually and in his capacity as county clerk and recorder of the city and county of Denver, the purpose of which was to restrain the defendant from canvassing the returns of the judges of election on the franchise, or certifying the results. The right to this relief was based substantially upon the grounds that fraud was practiced in the election by parties supporting the franchise; that the election was illegal, because not conducted by officials appointed by the city authorities; that it was not held at the time required by law; that the requisite preliminary steps necessary to initiate the ordinance had not been observed; that the streets, avenues,

alleys and other thoroughfares and public places of the city and county of Denver would be burdened by unauthorized erection of poles, wires and other structures appertaining to the telephone system proposed to be installed under the franchise, unless further proceedings were stayed; and that plaintiff would be irreparably injured unless such relief was granted. By an amendment to the complaint, the plaintiff further alleged that the defendant was without authority to canvas the vote in question, or certify the result thereof, and that, at the time of the commencement of the action, he was the owner of stock in The Colorado Telephone Company, a corporation operating a telephone system in the city and county of Denver, and that if the defendant (quoting from the amendment) "be not restrained from doing the acts and things complained of in the complaint, the property rights and property of this affiant, consisting of said stock, will be immediately and irreparably depreciated in value, and affiant will suffer immediate and irreparable loss."

To the complaint a general demurrer was filed, which was overruled, and judgment rendered, granting the relief prayed. From this judgment the defendant brings the case here for review on error.

The only question presented for consideration is the sufficiency of the complaint. Counsel for plaintiff in error contend that it is not sufficient for two reasons: (1) Because the election on the franchise was held in accordance with law; and (2) that the trial court was without jurisdiction to entertain the action.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The first point is manifestly without merit. The election was not held at the time required by law.

Article 10 of the charter refers to franchises. It is
there provided, by general § 265, that no fran-
chise, relating to the streets, alleys and public places
of the city, shall be granted, except upon the vote of
qualified, tax-paying electors. By § 267, it is provided
that no ordinance submitting such franchise shall be
put upon its final passage within thirty days of its
introduction or initiation. It thus appears that no
franchise of the character under consideration can
be granted except on a vote of qualified, tax-paying
electors, and that the question of submission may be
initiated in one of two ways: Either by introduction
by a member of the city council, or by petition of
electors. Nothing is said in article 10, or elsewhere,
with respect to the time when the question of grant-
ing a franchise shall be submitted to a vote, when the
matter of such submission originates with the city
council; but what the power of the city authorities
may be in this respect is not material, because, it ap-
pears, the ordinance submitting the question of grant-
ing a franchise originated by the method known as
the initiative. We must, therefore, turn to the pro-
visions of the charter on this subject. By § 22, un-
der the caption of "Initiative and Referendum," it
is said:

"Any proposed ordinance may be submitted to
the council by a petition therefor of the qualified
electors, in number not less than twenty-five (25)
per cent. of the vote at the next preceding election
for mayor, and the council shall forthwith pass such
ordinance without alteration, or refer the same to
the qualified electors at the next general election, not
held within thirty (30) days after such petition is
filed."

This embraces all ordinances initiated by the
electors. Its purpose was to compel an unwilling
council to act, or submit the proposed ordinance to

the qualified electors; but the ordinance in question related to a franchise over the streets and other public places of the city, and, therefore, could not be passed by the city council because of the inhibition contained in § 265, *supra;* so that all the city authorities could do was to submit the question to the qualified voters at the next general election, as expressed in § 22, *supra.*

What election is meant by the expression "next general election," is the next important question. The charter deals entirely with city and county affairs. It made provision for an election to be held on the third Tuesday of May, 1904, and every two years thereafter. It refers to this election as "a general city and county election," § 166. Its purpose was to provide for elections entirely independent of the general election to be held under the laws of the state for the election of state and county officials, and it did, in fact, make such provision; so that the expression "general election," as used in § 22, clearly refers to the next general city and county election, which occurs in May biennially, dating from 1904, and not to the biennial elections for state and county officials, held in November of the years when such elections, according to law, shall be held. It must, therefore, follow, that the election was not held at the time when, by the fundamental law of the city and county of Denver, it can only be held; and hence, whatever the result may have been, it confers no rights. An election, to be valid, must be held on the date which the law relating to it designates.— 15 Cyc. 341; *Dickey v. Hurlburt,* 5 Cal. 342; 10 Enc. 679.

Notwithstanding our conclusion that the election in question was not held upon the date required by law, we are of the opinion that the court was without jurisdiction to enjoin the defendant from canvassing

the vote thereon. The power to canvass the votes cast at an election for public purposes and certify the result thereof is political, and not judicial, and hence, a court of equity has no jurisdiction to inhibit the exercise of this power.—*Dickey v. Reed,* 76 Ill. 261; *State v. Carlson,* 101 N. W. 1004; *Hamilton v. Carroll,* 33 Atl. 648; *Harris v. Schryock,* 82 Ill. 119; note to *Fletcher v. Tuttle,* 42 Am. St. Rep. 220 (234).

It is sought to take the case at bar out of this general rule, because, it is claimed, the election is illegal, and that the county clerk has no authority to canvass the vote and certify the result. This claim is without merit, because these questions can be litigated and determined in the proceeding contemplated by § 289 of our Civil Code, to test the validity of a franchise. Besides, if the defendant has no authority to canvass the votes and certify the result, the plaintiff will not be injured. In such circumstances, it will be the grantee of the franchise who would suffer. Canvassing the returns and certifying the result does not render the election valid, if, in fact and in law, it is invalid. The action of the defendant, which the plaintiff seeks to restrain, will not prevent an appropriate action to test the validity of the franchise, nor complicate matters in any respect. In an action in equity the plaintiff must show that he will be injured by the acts sought to be restrained.

In support of the contention that the lower court had jurisdiction, it is claimed that it appears, from the averments of the complaint, that the plaintiff will suffer irreparable injury, because the value of his stock in The Colorado Telephone Company will be depreciated and the streets and public places of the city burdened with unnecessary appliances by the construction of a competitive telephone system. The franchise in controversy belongs to the public. So

far as the plaintiff is concerned, it does not appear
from the averments of his complaint that he will be
injured different from others, because the streets of
the city may be burdened with poles, wires and other
appliances erected and maintained for an additional
system, and, therefore, no facts are stated which
would entitle him to maintain the action on that ac-
count.   A bill in equity will not lie at the suit of an
individual to enjoin the alleged invasion of a public
right, where it appears the damage he may suffer is
no different from that of the public generally.—
*Landis v. Walls,* 66 N. E. 679.

It is claimed that the code proceeding to test the
validity of the franchise is not adequate, because
not sufficiently speedy, and plaintiff will suffer a loss
by reason of the depreciation of the value of his stock
in The Colorado Telephone Company pending the
determination of the validity of the franchise by
proceedings in *quo warranto* under the code, which
can be avoided by a determination of the questions
presented in the case at bar.   Whatever may be the
result upon the stock of plaintiff is not a matter
which can be considered in support of the contention
of his counsel, that the present action should be main-
tained.   The law has provided a special remedy by
which the validity of the franchise voted upon may
be tested, and if that remedy is not as speedy as it
should be, this is a fault which lies with the legisla-
ture to correct.   That body has made special pro-
vision for an action, wherein all the questions raised
by plaintiff may be settled, and it is not within the
power of the courts to adopt another.

The cases cited by counsel for plaintiff, in which
a court of equity assumed jurisdiction to test the
validity of an election, are not in point.   With the
exception of the *State v. Eggleston,* 34 Kan. 714,
they are based upon the theory that no special

remedy was provided by statute, and in such circumstances a court of equity would assume jurisdiction where injury was threatened, without remitting the parties to an action at law.

We passed upon the validity of the election, because it was the desire of counsel on both sides that this question be determined.

The judgment of the district court is reversed and the cause remanded, with directions to dismiss the complaint.          *Reversed and remanded.*

Decision *en banc.* CHIEF JUSTICE STEELE not participating.